IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUBEN ESCANDON,

        Petitioner,

v.                                                CIV 02-1561 LH/KBM

STATE OF NEW MEXICO, et al.

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    This matter is before the court on Ruben Escandon's "Motion To Order An Update On Good-Time Earned," which this Court has construed as a petition under 28 U.S.C. § 2241. *Doc. 1*. Respondents answered and move to dismiss. *See Docs. 12, 13*. They characterize the pleading as a petition for a writ of habeas corpus under 28 U.S.C. § 2254 and take the position that Petitioner did not exhaust his state remedies or file in a timely fashion under the requirements posed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). They also argue that the suit is patently meritless. *See Docs. 13, 14*.

    Petitioner has been incarcerated since 1977. In this suit, he claims that good-time credits were forfeited under a new law that went into effect in 1980, thereby increasing his sentence, but that he did not discover the problem until "years later."[1] Escandon contends that application of the new law violates the Ex Post Facto Clause and presumably wants the time he thinks was

---

[1] He seems to allude to another suit of his involving a different issue concerning a separate forfeiture of a portion of his good-time credits. *See Doc. 1* (portion labeled motion; "this court has the good-time sheet's [sic] on motion file approximately a year ago"). That case has been dismissed. *See Escandon v. Wackenhut,* CIV 00-1068 JC/WWD.

forfeited to be restored.  *See Doc. 1; see also id.* (portion labeled letter at III; "I did not know my time was increased till [sic] years later").

Because Petitioner is not challenging his underlying state conviction and the relief he seeks goes to the execution of his sentence, his pleading is a petition under § 2241 not § 2254.  *E.g., Montez v. McKinna,* 208 F.3d 862, 865 (10th Cir. 2000); *United States v. Furman,* 112 F.3d 435, 438 (10th Cir. 1997), *see also Doc. 10* (order requiring response to § 2241 petition).  It appears that AEDPA's exhaustion and limitations requirements apply to petitions under § 2241.  *See e.g., Burger v. Scott,* 317 F.3d 1133, 1138 -39 (10th Cir. 2003).  However, for the sake of argument, I will accept Plaintiff's assertions that he only recently learned of the problem and attempted to exhaust, *see Doc. 5,* and assume there are no limitations or exhaustion problems.

Petitioner's confusion and concern about the 1981 change on his good-time credit sheet is understandable.  On December 20, 1977, a jury found him guilty of four counts, apparently of trafficking heroin, that resulted in three consecutive sentences of a minimum of thirty and not more than one hundred fifty years imprisonment.  Later, by pleading guilty to the charges, he apparently successfully reduced the sentence to a minimum of twenty and not more than one hundred years in prison.  *See Doc. 12,* Exh. A.  Thus, when Petitioner entered prison, he potentially would not be released until 2077.

The first projected discharge year noted for him, however, indicated 2030, approximately half of the maximum sentence.  *See id.,* Exh. B.  Petitioner's good-time credit sheet also shows a July 29, 1980 entry of fourteen years, one month and seven days as "additional credits" for "LLCC on MGT," a phrase not defined on the document.  The resulting calculation column shows that this additional credit entry dropped Petitioner's potential discharge year from 2030 to

2016.  *See id.*  The sheet also shows that thirteen years, ten months and twenty-three days were "credits forfeited" on June 30, 1981 for "Adjust MGT Per New Law" and increased Petitioner's potential discharge year from 2016 to 2029.

Respondents explain that the change in the law affected how good-time credit was reported.  Previously, the Department of Corrections listed the projected amount of good-time an inmate ***could potentially*** earn on the good-time sheet, in addition to tracking the amounts actually earned.  The new law in 1981 required the Department to provide quarterly good-time credit reports to the inmates.  *See* N.M. STAT. ANN. § 33-2-34(D) (every inmate shall receive a quarterly statement of his accrued meritorious deductions").  As a result, the Department stopped listing projected good-time credits.  *See Doc. 14.*  Indeed, none of the other "additional credit" entries after 1981 show that they were entered for "LLCC."  Furthermore, the exhibits submitted by Respondents plainly show that Petitioner is receiving good-time credits that are reducing the time on his sentence.  *Doc. 12,* Exh. B (discharge year of 2029 as of 1980 is presently 2021).  With the explanation that there was in fact no forfeiture, I agree that the Ex Post Facto Clause is not implicated.

Wherefore,

**IT IS HEREBY RECOMMENDED** that the petition *(Doc. 1)* be dismissed with prejudice and that Petitioner's motions for appointment of counsel *(Docs. 15, 16)* and for "order re: facts ignored by Respondents" *(Doc. 18)* be denied.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A**

**party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE